## WILLIAM D. McCARTHY v. CITY OF ST. PAUL AND ANOTHER.
## WILLIAM JOSEPH McCARTHY v. SAME.[1]

November 19, 1937.

Nos. 31,297, 31,298.

[1]Reported in 276 N. W. 1.

*John L. Connolly* and *Hilary J. Flynn,* for appellants.
*Kyle & Kyle,* for respondents.

LORING, JUSTICE.

In suits to recover for personal injuries and for loss of services both the minor plaintiff and his father recovered verdicts against the city and its driver, who on June 26, 1935, was in charge of the road-grading machine which injured the minor plaintiff. Both defendants have appealed from the order denying their alternative motions for judgment notwithstanding the verdicts or for a new trial.

The appellant city asserts that at the time the minor plaintiff was injured by its machinery the city was engaged in the performance of a governmental function and therefore was not liable for the negligence, if any, of its agent. Both defendants assert that there is no evidence of any negligence on their part, and they claim that the minor plaintiff was guilty of contributory negligence as a matter of law. The trial court resolved all of these questions in favor of the plaintiffs.

In the case of McLeod v. City of Duluth, 174 Minn. 184, 218 N. W. 892, 60 A. L. R. 96, the plaintiff was injured by the carelessness of a city employe who was operating a street flusher on a paved street, and the case came to this court on the sole question of whether or not the city in flushing the street was engaged in a governmental function. This court held there, speaking through

Mr. Chief Justice Wilson, that the act of street sprinkling, although incidentally performed in the interest of public health, was performed in connection with the city's constant duty and obligation of maintaining its streets in good condition for public travel, and hence that the city was liable for the negligence of its employe. It has long been the established rule in this state that a city is under legal obligation to exercise reasonable care to keep and maintain its streets in a safe condition for public use. That rule has become so well established as to be fundamental in our jurisprudence, and it would be a very tenuous distinction to hold the city to such liability and free it from liability in connection with the negligence of its agents in the repair of the streets which it is bound to use reasonable care in maintaining in a safe condition. We therefore hold that the city is liable for the negligence of its employes while engaged in the repair of its streets. The McLeod case has stood for over nine years, and the legislature has since been in session several times. Had the rule there announced been contrary to what the legislature thought it should be, it has had ample opportunity to correct it. However, we think the doctrine in that case announced is sound, and we would adopt it were the case at bar one of first impression.

■ Boys were accustomed to play around these road-grading machines. The testimony of the defendant Byron quite frankly admits that there were generally a number of them around. This and other courts have frequently commented upon the high degree of vigilance necessary to constitute ordinary care where children may reasonably be expected to be present. In the case at bar the defendants were engaged in resurfacing one of the defendant city's streets and were using heavy blade and disk machines for that purpose. While in operation the blade moved at about three-quarters of a mile per hour. During the day on which the minor plaintiff was injured, the disk machine had been disabled for a time, and boys had gathered around it while repairs were being made. The injuries to the minor plaintiff occurred late in the afternoon soon after the disabled disk machine had been repaired and put in service. While both machines were being operated, the minor

plaintiff and one other boy named Soberg followed the blade machine along the street where it was being driven by the defendant Byron. The minor plaintiff started after it first. Soberg then followed and passed young McCarthy and got upon the step on the rear of the grader. Shortly before the machine reached an intersection the foreman, who was supervising Byron's work, drove up with an automobile. Byron was in doubt as to whether he should make another round trip before stopping for the night, and the foreman made some gestures to him. Whether Byron understood them or not, he stopped his machine and then started to back it up toward the foreman's car. It was as he started backing that the machine ran into and injured young McCarthy, who was then apparently looking back toward the foreman's car. McCarthy says the foreman got out of his car to pick up something from the street, and this attracted his attention. McCarthy claims that he was some three feet back of the road machine when it stopped; that he had then made up his mind that it was time for him to go home and that the machine caught him just as he was starting to do so. Young Soberg, when the machine stopped as the foreman drove up, jumped off the step and ran for the side of the street because he did not want to be caught stealing a ride. As he ran his back was toward the machine, but when he got over there he looked around and he insists that Byron did not look back of the machine as he started to back it up, but looked toward the foreman's car. Byron insists that he looked back but saw no boy. However, from the photographs of the machine it appears to us that the jury might well have found that from the position in which Byron stood as he operated the machine he must have seen young McCarthy or else he did not look. The backing process was not naturally to be expected, and we think that the jury might well have considered that Byron was guilty of negligence in not better looking out for or warning the boys, who, as he knew, were accustomed to play around the machine. Ordinary care under such circumstances required a very high degree of vigilance to see that the unusual operation of the machine did not injure the boys. Taulborg v. Andresen, 119 Neb. 273, 228 N. W. 528, 531, 67 A. L. R. 642; 2 Blashfield (Perm.

ed.) Cyc. Automobile Law & Practice, § 1496; Weasler v. Murphy T. & S. Co. 167 Minn. 211, 208 N. W. 657; Olesen v. Noren, 161 Minn. 113, 201 N. W. 296; Pease v. Gardner, 113 Me. 264, 93 A. 550.

■ Nor do we think that McCarthy, who was then about 13 years of age, was guilty of contributory negligence as a matter of law. Even a grown person might not have reasonably anticipated that the road machine would be backed up without a warning of the driver's purpose to do so. The standard of McCarthy's conduct is that of the ordinarily prudent boy of his age, capacity, and intelligence. We think the jury might well have found that he exercised the degree of care which was to be expected of such a boy. Hughes v. Minneapolis St. Ry. Co. 146 Minn. 268, 178 N. W. 605; Erickson v. W. J. Gleason & Co. 145 Minn. 64, 176 N. W. 199; Peterson v. Mauer, 162 Minn. 114, 202 N. W. 344.

Order affirmed.

