RUDOLF E. SHAWLEY, TRUSTEE FOR HEIRS AND NEXT OF KIN OF SUSAN ANN DEARMAN, v. ROGER HUSMAN.

78 N. W. (2d) 60.

June 22, 1956—No. 36,806.

 

*A. Paul Lommen, Robert J. Munson,* and *James J. Trench,* for appellant.

*George, Brehmer & McMahon,* for respondent.

MURPHY, JUSTICE.

This is an action to recover damages for death by wrongful act under M. S. A. 573.02 brought by Rudolf E. Shawley, as trustee for the heirs of Susan Ann Dearman, against Roger Husman. At the conclusion of plaintiff's evidence, the trial court granted defendant's motion to dismiss, denied plaintiff's subsequent motion for a new trial, and ordered judgment entered for defendant. Plaintiff is appealing from the judgment.

On November 11, 1954, between 5 and 5:30 p. m., Susan Ann Dearman, then seven years old, was struck by defendant's car as she attempted to cross U. S. Highway No. 61 in Dresbach, Minnesota. She died shortly after the accident. Highway No. 61 runs in a general north-south direction through Dresbach and is intersected from the west by "D" street which ends at the highway. About 100 to 120 yards north of this T intersection is a graveled road running northeasterly off the highway. The intersection was lighted by an overhead center street light.

Defendant was driving north on No. 61 in the right-hand lane. He followed, by about a block, other cars traveling north and was not accelerating or trying to pass others in line. The decedent was reported by the only eyewitness to have been running to the east down "D" street, then out onto highway northeasterly toward the gravel road on the other side. The witness lost sight of the girl after she crossed the center line. Defendant first noticed her when she was two or three feet left of the center line, running toward his lane but at a slight northeasterly angle. He applied his brakes and swung his car to the right upon seeing decedent, the actual contact being about three feet right of the center line.

The speed limit in the area in question is 40 miles per hour. There is no evidence as to defendant's speed in the record. After the accident, the child lay near the rear of defendant's car, which was stopped on the east shoulder south of the gravel road.

We have before us only the narrow question of whether or not on these facts the defendant's negligence should be a jury issue. The question ultimately is one of lookout. As we have frequently said, only a high degree of vigilance will constitute ordinary care where children may reasonably be expected to be present. See, e.g., Audette v. Lindahl, 231 Minn. 239, 42 N. W. (2d) 717; Otterness v. Hathaway, 204 Minn. 88, 282 N. W. 687. Defendant had driven through Dresbach before and on his previous trips had seen a "Watch out for Children" sign at the north end of the town. He had also noticed children playing in the area. Being aware of the possible presence of children, he might have expected them to be in that area between 5 and 5:30 p. m. on a holiday. In any event, whether he exercised the required degree of vigilance under the circumstances was a fact question for the jury.

And we believe it also to be for the jury to decide whether or not he was derelict in this duty in failing to maintain a proper lookout. The briefs of both counsel are replete with cases involving children being hit by automobiles. The following cases are cited by the parties as controlling. Plaintiff relies on Forseth v. Duluth-Superior Transit Co. 202 Minn. 447, 278 N. W. 904; Weasler v. Murphy Transfer & Storage Co. 167 Minn. 211, 208 N. W. 657; Schroeder v. Streed, 231 Minn. 267, 42 N. W. (2d) 816; defendant on Bowers v. Colonial Warehouse Co. 153 Minn. 425, 190 N. W. 609, and two cases from other jurisdictions. Little could be gained from a lengthy discussion of these cases; they are all agreed on the applicable standard but are all factually dissimilar to the instant case.

Here the intersection was lighted by an overhead street light. The decedent, though dressed in dark clothes, was in clear view according to an eyewitness even before she left the street to enter the highway. She ran about 60 or 70 feet down the highway at a

northeasterly angle, being the whole time within the range of the street light and defendant's headlights. The air was clear; there were no oncoming cars; and apparently nothing to obstruct or distract the defendant's view. To have struck the child at all, defendant would have had to have been quite some distance back from the point of contact when the child entered the lighted intersection, assuming he was traveling a constant speed north during the entire time it took her to run the 60 to 70 feet.

On a motion by the defendant for a dismissal or directed verdict, the credibility of the evidence and every inference which may be fairly drawn therefrom must be viewed in the light most favorable to plaintiff, and the motion should be granted only where in the light of the evidence as a whole it would be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence. 19 Dunnell, Dig. (3 ed.) § 9764. Plaintiff has shown facts sufficient to allow a jury to decide whether or not defendant was negligent in failing to maintain a proper lookout.

■ Plaintiff also contends that the jury should have been permitted to decide whether defendant was driving at excessive speed. Without considering the resultant proximate cause question, we can dispose of this claim by observing that on the record before us there is no indication of defendant's speed. The eyewitness, after considerable vacillation between various estimates before trial as opposed to that at the trial,[1] testified that the line of cars she saw was going between 40 and 50 miles per hour. She further testified that there was a car about a block behind the line she observed but that she paid no attention to this car. She did not know which car hit decedent and was not sure she had seen defendant's car until after it stopped. Her testimony could not, of itself, justify any finding concerning defendant's speed. Although plaintiff called defendant under Rule 43.02 of Rules of Civil Procedure, he did not ask him his speed,

---

[1]This, however, would be a matter of credibility and, had there been adequate foundation for her testimony, would have been for the jury to decide.

and defendant's estimate of his speed appears nowhere in the record.[2] The physical evidence, rather than supporting an inference of excessive speed as in the case on which plaintiff relies,[3] tends to indicate the opposite. The child was not thrown far by the impact nor did the car travel far before coming to a stop. We must agree with the trial court in holding there to be insufficient evidence to allow the speed question to go to the jury.

But, as has been indicated above, there is a clear jury issue on whether or not defendant maintained a proper lookout under the circumstances. To decide this question there must be a new trial.

Reversed and new trial granted.

[2]Defendant did admit he did not slow down for the intersection—a possible violation of § 169.14, subd. 3—but plaintiff has not raised the point and on the state of the record before us there is no starting point from which a jury could have decided if under the circumstances he should have reduced his speed.

[3]Schroeder v. Streed, 231 Minn. 267, 42 N. W. (2d) 816.